

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

NEWSPRING INDUSTRIAL CORPORATION,

      Plaintiff,

vs.

MASS DISTRIBUTORS WAREHOUSE, INC., D.J. PAYNE CORP. and STEVEN H. BERLIANT,

      Defendants.

**F I L E D**   *LAL*

JAN 2 3 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

06 C 0397

Judge    *JUDGE GETTLEMAN*

Magistrate    *MAGISTRATE JUDGE COLE*

## COMPLAINT

Plaintiff, NEWSPRING INDUSTRIAL CORPORATION ("Newspring"), by and for its Complaint in the above-captioned matter, states as follows:

### THE PARTIES

1.    Newspring is a corporation with its principal place of business located at 35 O'Brien Street, Kearny, New Jersey 07032 and incorporated in the State of New Jersey. Newspring is a wholly-owned company of Pactiv Corporation, a publicly traded company (NYSE: PTV) with its headquarters in Lake Forest, Illinois and a leading producer of specialty packaging products for the consumer and foodservice/food packaging markets.

2.    On information and belief, Defendant Mass Distributors Warehouse, Inc. ("Mass Distributors"), is an entity having a place of business at 900 Morse Avenue, Elk Grove Village, Illinois, 60007 and is incorporated in the State of Illinois.

3.    On information and belief, Defendant D.J. Payne Corp. ("D.J. Payne") is an entity having a place of business at 900 Morse Avenue, Elk Grove Village, Illinois, 60007 and is incorporated in the State of Illinois.

4.     On information and belief, Steven H. Berliant is the incorporator, controlling shareholder and controlling principal of Mass Distributor and D.J. Payne.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

6.     Under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), venue is appropriate in this district. Defendants Mass Distributor and D.J. Payne arc incorporated, and have a regular and established place of business therein. Defendant Steve Berliant resides and conducts regular business therein. Additionally, all infringement and other causes of action have occurred therein. Additionally, Defendants are subject to personal jurisdiction in this district.

## NEWSPRING'S PATENTS

7.     On February 11, 1997, Jeffrey Chen applied to the U.S. Patent and Trademark Office ("PTO") for a design patent, application number 29/066,299. U.S. Patent No. D415420 (the "'420 patent") issued on October 19, 1999. A copy of the '420 patent is attached as Exhibit A hereto.

8.     Jeffrey Chen assigned the '420 patent to Newspring.

9.     The '420 patent is a design patent claiming figures depicting a round container.

10.     On January 14, 2000, Jeffrey Chen applied to the PTO for a utility patent with application number 09/483,350. On May 6, 2001, U.S. Patent No. 6,196,404 B1 (the "'404 patent") issued. A copy of the '404 patent is attached as Exhibit B hereto.

11.     Jeffrey Chen assigned the '404 patent to Newspring.

12.     The '404 patent is a utility patent for features of the container seal with protrusion.

## THE VERSAtainer® PRODUCT TRADE DRESS

13.     Newspring has successfully developed a new container that is marketed under the registered trademark VERSAtainer® ("VERSAtainer®"). The VERSAtainer® is an attractive, high quality food container utilizing features disclosed in the '420 and '404 patents.

14.     Newspring's VERSAtainer® products are sold, typically via distributors, to a wide range of end users such as restaurants, educational and government institutions with food-service programs. The relevant market for Newspring is characterized by purchasers who associate certain designs with certain manufacturers such as Newspring.

15.     Although not part of the '420 Patent, certain other distinctive features of the VERSAtainer® identify the product to the public and are, thus, relevant to Newspring's trade dress claim. Specifically, among other things, the model numbers of the different shaped products, the colors of the opaque plastic bottom of the container, and the type of packaging contribute to the distinctive image and customer identification of the VERSAtainer®.

16.     The VERSAtainer® is available in either black or white. Those colors do not aid in performing the function of the VERSAtainer®.

17.     The design of the VERSAtainer®, including those elements that are the subject of the '420 Patent, and also including the black and white color of the container bottoms, has acquired a secondary meaning in that it signifies to the purchasing distributor or commercial end user that the product emanates from Newspring.

18.     In the wholesale market for commercial food containers, products are typically known industry-wide by their model numbers, and secondary meaning attaches to those model numbers as indicators of source, manufacturer and commercial affiliation of the product.

Newspring's most prominent models of the VERSAtainer® are Model Nos. 718, 723, 729, 838, 868 and 888 (the "718", "723", "729", "838", "868" and "888").

19.     The food container industry knows and readily recognizes the 718, 723, 729, 838, 868 and 888 as distinctive and innovative products of Newspring and associates the numeric model designations with Newspring as the source of manufacture and commercial affiliation of the product. The 718, 723, 729, 838, 868 and 888, when applied to plastic food containers and within the wholesale market for commercial food containers, have acquired secondary meaning.

20.     Newspring developed packaging of the VERSAtainer® in 150/150 combo packaging where 150 lids and 150 bases of the containers, respectively, are compactly stacked separately in cartons to effectively utilize shipping/storage space.

21.     The food container industry knows and readily recognizes 150/150 combo packaging with Newspring as the source of manufacture and commercial affiliation of the product. The 150/150 combo packaging, when applied to plastic food containers and within the wholesale market for commercial food containers, has acquired secondary meaning.

## DEFENDANTS' INFRINGING ACTIVITIES

22.     For several years, the Defendants have acted as major distributor of Newspring's VERSAtainer products. Thus, the purchasing public has come to identify Defendants as a legitimate source of Newspring VERSAtainer patented products.

23.     More recently, the Defendants have dramatically reduced their purchases of Newspring VERSAtainer products.

24.     On information and belief, as substitute products, the Defendants have been offering for sale and selling their infringing containers ("the infringing goods").

25.     Upon information and belief, the infringing goods are round and rectangular plastic containers with transparent lids and opaque bases, having a triple seal formed between the lids and bases.

26.     On information and belief, the Defendants have approached and continue to approach persons or entities in the market for plastic food containers, including Newspring's previous VERSAtainer® customers, and offered to sell to these customers Defendants' infringing products.

27.     On information and belief, the Defendants now market, offer for sale and sell infringing goods to customers within the Northern District of Illinois.

28.     On information and belief, the Defendants are marketing, offering for sale and selling infringing goods that employ the design claimed in the '420 Patents and the technology claimed by the '404 Patent.

29.     The design of the infringing products is essentially identical to the design of Newspring's VERSAtainer® products. The infringing products contain the design elements claimed in the '420 Patent and many of the other distinctive trade dress attributes of the VERSAtainer® products.

## COUNT I-PATENT INFRINGEMENT

30.     Newspring repeats and realleges each of the allegations in paragraphs 1 through 29 and incorporates them by reference as though fully set forth here.

31.     On information and belief, the Defendants have marketed, sold and offered to sell products that infringe the '420 patent and the '404 patent.

32.     The Defendants' acts violate Newspring's rights under the patent laws of the United States.

33.     Newspring notified the public of its rights under the '420 patent and the '404 patent in accordance with 35 U.S.C. § 287.

34.     On information and belief, the Defendants' acts of infringement were and continue to be knowing and willful in violation of Newspring's rights under the patent laws of the United States and the '420 patent and the '404 patent.

35.     The Defendants' knowing and willful acts of patent infringement are continuing and ongoing.

36.     On information and belief, the Defendants will not cease committing the wrongful acts alleged in this Complaint without the intervention and injunction of this Court.

37.     Newspring has suffered monetary damages due to the wrongful acts of patent infringement by the Defendants, including without limitation sales unfairly lost and/or diverted to them, all to the detriment of Newspring.

## COUNT II-TRADE DRESS INFRINGEMENT (Lanham Act)

38.     Newspring repeats and realleges each of the allegations in paragraphs 1 through 37 and incorporates them by reference as though fully set forth here.

39.     The look of the VERSAtainer®, including without limitation its configuration and design, color, transparent lid, model number, packaging and other elements of its appearance, constitute a trade dress protectable under the trademark laws of the United States, 15 U.S.C. § 1125.

40.     Defendants have used in commerce Newspring's trade dress for the VERSAtainer® in a manner that is likely to cause confusion, mistake or to deceive another person as to the source, origin or affiliation of the Defendants' commercial activities and infringing product.

41. The acts of the Defendants constitute trade dress infringement in violation of 15 U.S.C. § 1125.

42. Defendants' wrongful acts of trade dress infringement are continuing and ongoing.

43. On information and belief, the Defendants' acts of infringement were and continue to be intentionally and knowingly in violation of Newspring's rights under the laws of the United States.

44. On information and belief, the Defendants will not cease committing the wrongful acts alleged in this Complaint without the intervention and injunction of this Court.

45. Newspring has suffered and will continue to suffer monetary damages due to the wrongful acts of trade dress infringement by Defendants, including without limitation sales unfairly lost and/or diverted to the Defendants.

## COUNT III-UNFAIR COMPETITION
### (Illinois Uniform Deceptive Trade Practices Act and Illinois Common Law)

46. Newspring repeats and realleges each of the allegations in paragraphs 1 through 45 and incorporates them by reference as though fully set forth here.

47. This cause of action arises under the Illinois Uniform Deceptive Trade Practices Act (UDTPA) codified at 815 ILCS 510/1 *et. seq.* and the common law of the State of Illinois.

48. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367.

49. On information and belief, in the course of their business, the Defendants have marketed, used, sold, offered for sale and distributed in this State a reproduction, counterfeit,

copy, or colorable imitation of the VERSAtainer®'s trade dress on their infringing goods in a manner likely to cause confusion or misunderstanding as to the source of the infringing goods.

50.     On information and belief, Defendants' goods are likely to confuse or mislead customers as to source because they contain, for example, design elements claimed in the '420 Patent and many of the other distinctive attributes of Newspring's VERSAtainer® products, including deceptively similar model numbers, packaging and identical colors.

51.     On information and belief, Defendants' marketing, use, sale, offers for sale and distribution in this State of a reproduction, counterfeit, copy, or colorable imitation of the VERSAtainer®'s trade dress on their infringing goods in a manner likely to cause confusion or misunderstanding as to the source of the infringing goods, constitute deceptive acts in violation of 815 ILCS 510/2 §§ 2(a)(2) and 2(a)(12) and the common law of Illinois.

52.     On information and belief, in the course of their business, Defendants have passed off their infringing goods as goods of Newspring, intentionally and with knowledge of the damage to and unfair appropriation of Newspring's rights.

53.     The Defendants' acts of passing off its goods as those of Newspring constitute deceptive acts in violation of 815 ILCS 510/2 §§ 2(a)(1) and 2(a)(12) and the common law of Illinois.

54.     On information and belief, the Defendants' acts of unfair competition were and continue to be willful and knowing, in violation of the rights of Newspring under the laws of the State of Illinois.

55.     On information and belief, the Defendants will not cease committing the wrongful acts alleged in this Complaint without the intervention and injunction of this Court.

56.     Newspring has suffered and will continue to suffer monetary damages due to the wrongful acts of the Defendants constituting state-law unfair competition, including without limitation sales unfairly lost and/or diverted to Defendants, all to the detriment of Newspring.

**WHEREFORE,** Newspring respectfully requests and demands judgment as follows:

a.      That the Defendants and their agents, employees, assigns, and all persons acting under their control, be permanently enjoined from manufacturing, selling, attempting to sell, purchasing, promoting, storing, shipping, receiving, maintaining in their possession or otherwise exploiting in commerce the infringing products or any other product that (1) infringes the '420 patent and/or the '404 patent, (2) is confusingly similar in trade dress or otherwise to the VERSAtainer®, or (3) constitutes an unauthorized imitation of the VERSAtainer® or passing off of such an imitation as the VERSAtainer® product;

b.      That plaintiff Newspring be awarded its actual and consequential damages in an amount necessary to compensate Newspring for the damages caused by the Defendants' conduct in violation of law and equity, including the patent infringement, trade dress infringement and unfair competition committed by Defendants;

c.      That plaintiff Newspring be awarded the profits of the Defendants related to the infringing products, pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 289;

d.      That plaintiff Newspring be awarded treble damages pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117;

e.      That the Court declare this an exceptional case and that plaintiff Newspring be awarded its costs and attorneys fees in this action pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117; and

f.    That Newspring be awarded such further relief as the Court shall find just and equitable.

Respectfully Submitted,

NEWSPRING INDUSTRIAL CORPORATION,
Plaintiff

By:_____

One of its attorneys

Mr. Jonathan M. Weis - #06238340
Mr. Mitchell S. Chaban - #6226668
LEVIN GINSBURG
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100
Facsimile: (312) 368-0111
*Local Counsel*

Mr. David E. De Lorenzi
Mr. Michael Cukor
Ms. Sheila F. McShane
Mr. Robert M. Fuhrer (*pro hac vice* application pending)
GIBBONS, DEL DEO, DOLAN, GRIFFINGER
   & VECCHIONE
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
*OF COUNSEL*

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff Newspring Industrial Corporation hereby demands a jury trial on all issues.

Respectfully Submitted,

NEWSPRING INDUSTRIAL CORPORATION,
Plaintiff

By:_____
One of its attorneys

Mr. Jonathan M. Weis - #06238340
Mr. Mitchell S. Chaban - #6226668
LEVIN GINSBURG
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100
Facsimile: (312) 368-0111
*Local Counsel*

Mr. David E. De Lorenzi
Mr. Michael Cukor
Ms. Sheila F. McShane
Mr. Robert M. Fuhrer (*pro hac vice* application pending)
GIBBONS, DEL DEO, DOLAN, GRIFFINGER
    & VECCHIONE
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
*OF COUNSEL*

# EXHIBIT "A"

Exhibit "A"

US00D415420S

# United States Patent [19]

## Chen

| [11] | Patent Number: | Des. 415,420 |
| --- | --- | --- |
| [45] | Date of Patent: ** | Oct. 19, 1999 |

[54] **DOUBLE SEALED RIM STACKABLE CONTAINER**

[75] Inventor: **Jeffrey Chen**, Staten Island, N.Y.

[73] Assignee: **Newspring Industrial Corporation**, E. Newark, N.J.

[**] Term: **14 Years**

[21] Appl. No.: **29/066,299**

[22] Filed: **Feb. 11, 1997**

[51] LOC (6) Cl. ............................................... **09-07**

[52] U.S. Cl. ................................................. **D9/428; D7/629**

[58] **Field of Search** ............................. D9/428, 429, 431, D9/425, 424; 206/541, 508; 229/4.5, 406, 938; 220/4.21, 4.2, 4.23, 4.24, 4.25; D7/629; D28/82

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| D. 335,085 | 4/1993 | Wacker | D9/428 X |
| D. 357,552 | 4/1995 | Carranza | D28/82 |
| D. 372,862 | 8/1996 | Flori | D9/428 |
| D. 373,954 | 9/1996 | Wolff | D9/429 |
| D. 375,261 | 11/1996 | Flori | D9/428 |
| D. 380,124 | 6/1997 | Kato et al. | D7/629 X |

| 3,720,365 | 3/1973 | Unger | 229/406 |
| 3,955,710 | 5/1976 | Commisso | 229/406 X |
| 5,220,999 | 6/1993 | Goulette | 229/406 X |

### OTHER PUBLICATIONS

Modern Packaging, p. 318, 1967.
Ultra Fresh Containers, p. 10, Mar. 1995.
Tenneco Packaging, p. 20, 1996.

*Primary Examiner*—Prabhakar Deshmukh
*Attorney, Agent, or Firm*—Gibbons, Del Deo, Dolan, Griffinger & Vecchione

[57] **CLAIM**

The ornamental design for a double sealed rim stackable container, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of a double sealed rim stackable container according to the present invention including a container bottom and lid;
FIG. 2 is a side view of a container with lid thereof;
FIG. 3 is a top plan view of a lid thereof;
FIG. 4 is a top plan view of a container bottom thereof;
FIG. 5 is a side view of a lid thereof; and,
FIG. 6 is a side view of a container bottom thereof.

**1 Claim, 5 Drawing Sheets**



**U.S. Patent**    Oct. 19, 1999    Sheet 1 of 5    **Des. 415,420**



**Fig. 1**

**U.S. Patent**  Oct. 19, 1999  Sheet 2 of 5  **Des. 415,420**



## Fig. 2



**Fig. 3**



Fig. 4



Fig. 5



Fig. 6

# EXHIBIT "B"

**Exhibit "B"**



US006196404B1

(12) **United States Patent** (10) Patent No.: **US 6,196,404 B1**

Chen (45) Date of Patent: **Mar. 6, 2001**

(54) **TRIPLE SEAL CONTAINER WITH PROTRUSION**

(75) Inventor: **Jeffrey Chen**, Staten Island, NY (US)

(73) Assignee: **Newspring Industrial Corp.**, East Newark, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/483,350**

(22) Filed: **Jan. 14, 2000**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/120,985, filed on Jul. 22, 1998, which is a continuation-in-part of application No. 29/066,299, filed on Feb. 11, 1997, now Pat. No. Des. 415,420, and a continuation-in-part of application No. 29/081,160, filed on Dec. 23, 1997.

(51) Int. Cl.[7] .............................................. **B65D 41/16**

(52) **U.S. Cl.** ...................... **220/4.21**; 220/780; 220/781; 220/792; 206/505

(58) **Field of Search** ................................. 220/4.21, 4.24, 220/780, 781, 782, 783, 790, 792, 796, 797, 798, 801, 802, 305; 206/503, 508, 505, 515, 519

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,798,631 | * | 7/1957 | Engel | 220/266 X |
| 4,124,141 | * | 11/1978 | Armentrout et al. | 220/783 |
| 4,555,043 | * | 11/1985 | Bernhardt | 220/783 |
| 4,844,263 | * | 7/1989 | Hudtke | 206/508 |
| 5,377,860 | * | 1/1995 | Littlejohn et al. | 220/780 |
| 5,553,701 | * | 9/1996 | Jarecki et al. | 220/780 X |
| 5,758,791 | * | 6/1998 | Mangla | 220/780 X |
| 6,056,138 | * | 5/2000 | Chen | 220/4.21 |

* cited by examiner

*Primary Examiner*—Nathan J. Newhouse
(74) *Attorney, Agent, or Firm*—Gibbons, Del Deo, Dolan, Griffinger & Vecchione

(57) **ABSTRACT**

The present invention is a container for food. The container has a lid and a base which form a series of three self-reinforcing seals when mated. A protrusion on the lid reinforces the triple seal formed between the lid and base. The protrusion applies a force to the base, locking the lid and base together. The third seal has the largest surface area and acts as a first line of defense against food leakage out of the container and a last line of defense against the entry of contaminants into the container.

**9 Claims, 6 Drawing Sheets**





Fig. 1

Case: 1:06-cv-00397 Document #: 1 Filed: 01/23/06 Page 22 of 29 PageID #:22



Fig. 2



Fig. 3



**Fig. 4**

Case: 1:06-cv-00397 Document #: 1 Filed: 01/23/06 Page 25 of 29 PageID #:25



**Fig. 6**

US 6,196,404 B1

1

## TRIPLE SEAL CONTAINER WITH PROTRUSION

### RELATED APPLICATIONS

The present patent application is a continuation-in-part of U.S. patent application Ser. No. 09/120,985 (NIC-3) filed Jul. 22, 1998 and now pending in the United States Patent and Trademark Office, which is a continuation-in-part of U.S. patent application Ser. No. 29/066,299 (NIC-1) filed Feb. 11, 1997 now U.S. Pat. No. D 415,420 and U.S. patent application Ser. No. 29/081,160 (NIC-2) filed Dec. 23, 1997. The applications have common inventors and assignees and are incorporated herein by reference.

### FIELD OF THE INVENTION

This invention generally relates to containers for storing and transporting food, and in particular to a sealing component formed between a base and a rim of a container for storing food.

### BACKGROUND OF THE INVENTION

There are various container assemblies currently used in the "take-out" food industry which are capable of transporting and storing food for a temporary period. It is important that such containers may be sealed to prevent the leakage and/or spoilage of food while in transport or storage. Currently, there are various designs available for such a purpose in the food industry.

An example of such a container consists of a lid and base portion that, upon mating form a seal to prevent leakage and spoilage. These containers are made of various materials including an aluminum base having a cardboard lid and a plastic base with a plastic lid. Specifically, an aluminum base forms a seal with the lid by the folding of the base around the peripheral to grasp the lid. This seal is not effective at preventing the food from leaking out of the container through the seal, especially when liquid is contained within the container. In addition, such containers are inconvenient because the assembly and disassembly proves to be both time consuming and messy.

Containers which consist of a base and lid made of plastic typically have only one or two seals to prevent the flow of food out of the container area and to prevent the introduction of bacteria and air into the container. With such containers, however, food leakage can occur when one or both seals are broken. Typical double seal containers provide two identical seals, one interior to the other. The seals have small surface areas to prevent the flow of food, liquids and/or air. Disadvantageously, the small surface area of the seals results in failure of the seal more often than acceptable. In addition, double seal containers typically have the two seals located right next to each other, so that if food has leaked through one seal, it is highly likely that the food will leak through the other. In other words, the placement of the seals on the currently available containers does not allow the seals to reinforce each other because they are close in proximity.

There are also available certain containers having three seals. Again, as with the double and single seal containers, the surface area of the seals is small and the proximity of the seals is close. Therefore, the likelihood of failure of theses seals is great.

Yet another example of a container currently available in the "take-out" food industry are the traditional Chinese Food take-out containers. These containers are made completely of cardboard. These containers form a seal on top by the

2

folding over of interlocking flaps. This seal is not airtight and thus, leakage is a common occurrence. In addition, food often leaks out of the bottom of such containers because the bottom is composed of one piece of cardboard folded to form the container. Thus, there are gaps in the container, along the folds. In addition, the cardboard of the container weakens easily and is not effective for storing food that may be left over.

Considering the great number of containers in use in the take-out industry, there is a need for a container having a seal which prevents food leakage and spoilage. In addition, there is a need for a container which may be easily and readily assembled and disassembled. In addition, the container must be of such quality such that it is capable of storing foods for some length of time. Yet another desirable feature is for a container that may be easily and compactly stored.

### SUMMARY OF THE INVENTION

The present invention is a triple seal container having a protrusion on the lid which reinforces the triple seal formed between the lid and base. The invention uses a series of three self-reinforcing seals. The protrusion applies a force to the base, locking the lid and base together. The third seal has the largest surface area and acts as a first line of defense against food leakage out of the container and a last line of defense against the entry of contaminants into the container.

The present invention overcomes the disadvantages of the prior art because it is easily assembled and disassembled while having a triple seal reinforced by the protrusion. In addition, such a triple seal is excellent for protecting food while in transport and storing such food in the container for a long period of time. The invention also provides for an area for easy grasping of the container without burning the user's fingers, if the contents of the container are hot.

In an exemplary embodiment of the present invention, the container comprises a base and a lid which, when mated, form three seals, two of which are reinforced by the protrusion. The interior seal has a surface area larger than the middle and exterior seals. The protrusion is located on the lid and urges the base to contact with the lid at such a point, resulting in the reinforcement of the middle and exterior seals.

Advantageously, the use of three seals and a protrusion on the container does not preclude easy assembly of the lid and base. The ability to break the seal, and remove or introduce food to the container, then close all three seals is easily accomplished with the present invention through the application of a small force. The closure involves no more than simple pressure on the lid and the sealing of the exterior or middle seal ensures the closure of the remaining seals.

The container of the present invention are same size stackable, with one base fitting into the base of the next container, and the lids acting in the same fashion. The invention is stackable when in the fully assembled position as well. This dramatically reduces the storage space required to keep large quantities of the invention. The present invention is, therefore, a safe, easy to use container that can be used in the food preparation and distribution industries and in the private home.

### BRIEF DESCRIPTION OF THE DRAWINGS

For a detailed understanding of the present invention, reference should be made to the following detailed description taken in conjunction with the accompanying drawings wherein:

Case: 1:06-cv-00397 Document #: 1 Filed: 01/23/06 Page 27 of 29 PageID #:27



Fig. 5

3

FIG. 1 is a perspective view of the lid;

FIG. 2 is a side view of the lid;

FIG. 3 is a perspective view of the base;

FIG. 4 is an enlarged view of the seals between the lid and the base;

FIG. 5 is a side view of the fully assembled container including a base and a lid; and

FIG. 6 is an enlarged view of three lids, stacked one on top of the next;

## DETAILED DESCRIPTION

FIGS. 1 and 2 show a lid 100 having a substantially planar top portion 110 with a slightly raised, substantially planar region 120 parallel to a top portion 110. A peripheral wall 130 extends substantially vertically downward from the top portion 110. A rim 140 extends substantially horizontally from the peripheral wall 130. An inner edge 150 extends generally perpendicularly upwards from the rim 140. A protrusion 405 (FIG. 4) is attached to the inner edge 150. A middle sealing edge 160 is connected substantially perpendicularly to the inner edge 150. From the middle sealing edge 160, an exterior sealing edge 170 stretches generally downwards. A locking lip 200 protrudes from the exterior sealing edge 170.

Referring now to FIG. 3, a base 300 is illustrated having a substantially planar bottom portion 310, including a slightly raised, substantially planar region 320, that is parallel to bottom portion 310. Connected to the bottom portion 310, is a convex extension surface 330, which runs along the perimeter of base 300. From convex extension surface 330, a perimeter wall 340 extends substantially vertically upwards. The perimeter wall 340 ends in a generally horizontally extending rim 350. Rim 350 is integrally connected to a generally perpendicular upwardly extending inner edge 360. A middle sealing edge 370 extends substantially horizontally from the inner edge 360 and an exterior sealing edge 380 extends substantially vertically downwards from the middle sealing edge 370.

Given the above structure, the interaction between the various lid and base components are now described with respect to FIGS. 4 and 5. FIG. 4 shows an enlarged view of the three seals and FIG. 5 shows a fully assembled container 500. This interaction creates the triple seal formation of the present invention.

Lid 100 is pressed in a downward motion onto base 300. Lid 100 and base 300 are aligned by inner edge 150 and protrusion 405, with locking lip 200 contacting downwardly exterior base sealing edge 380.

Upon the application of downward pressure on the lid 100, locking lip 200 flexes exterior sealing edge 170 outwards. Further downward pressure on the lid 100 pushes the locking lip 200 past the end of base exterior sealing edge 380. Locking lip 200 then moves inwardly with lid exterior sealing edge 170 flexing inwardly to contact exterior base sealing edge 380. Upon the mating of the lid 100 and base 300, a container as shown in FIGS. 4 and 5 is assembled.

In the fully assembled container 500, an interior seal 410 is formed between lid rim 140 and base rim 350, a middle seal 420 is formed between lid middle sealing edge 160 and base middle sealing edge 370, and an exterior seal 430 is formed between lid exterior sealing edge 170 and base exterior sealing edge 380. Upon this mating of the lid 100 and the base 300, the protrusion 405 applies a force to the base inner edge 360. This force, in turn, pushes the base middle sealing edge 370 against the lid middle sealing edge

4

160, reinforcing the middle seal and pushes the base exterior sealing edge 380 against the lid exterior sealing edge 170 reinforcing the exterior seal. In addition, the seals are self-reinforcing because the engagement of any one of the three seals, will urge the engagement of the two remaining seals. Although the container 500 is rectangular in configuration, it may be any variety of shapes, for example, round, square, oval, or oblong.

In addition to acting as seals, the interior seal 410, middle seal 420 and exterior seal 430 are conveniently located on the container 500 so that this area, as a whole may be grasped to carry the container. This proves especially helpful when the contents of the container 500 are hot or when the container 500 is removed from the microwave.

In the exemplary embodiment of the invention, the interior seal 410 is larger than either the exterior seal 430 or the middle seal 420. With the increased surface area, this interior seal 410 acts as a larger first barrier against leakage from the container 500, and a superior final barrier against bacterium and contamination.

Referring now to FIGS. 1 and 6, it can be seen that the lids 100, and bases 300, can be easily stacked in nested columns, lid upon lid and base upon base. The lids 100 are stackable since the locking lip 200 rests directly upon the middle sealing edge 160 of the next lid. The bases are also stackable since the planar bottom portion 310 of one base rests upon the planar bottom portion 310 of the next base. In addition, base rim 350 provides support for the next base rim 350. The stackability of the lids and bases provides a minimal stacking height and minimizes the required storage area. In addition, the top portion 110 and the substantially planar region 120 of the lid 100 is fitted with the bottom portion 320 and the substantially planar region 320 of the base 300 so that the fully assembled container 500 may be stacked securely one on top of the other.

In an alternative embodiment of the present invention, the container may take on an oval, or circular configuration. The critical components of both the lid 100 and base 300 remain substantially identical to those described herein.

While the invention has been described with reference to preferred embodiments, it should be appreciated by those skilled in the art that the invention may be practiced, otherwise than as specifically described herein without departing from the scope of the invention. It is, therefore, to be understood that the scope of the invention be limited only by the appended.

What is claimed is:

1. A container having three seals, comprising:

a base having

    a substantially planar bottom,

    a base perimeter wall extending substantially vertically upward from said bottom,

    a base rim extending substantially horizontally outward from said base perimeter wall, and

    a base sealing edge attached to said base rim; and

a lid having

    to a substantially planar top,

    a lid perimeter wall extending substantially vertically downward from said top,

    a lid rim extending substantially horizontally outward from said lid perimeter wall,

    a lid sealing edge attached to said lid rim,

    a protrusion attached to said lid sealing edge, and

    a locking lip protruding from said sealing edge;

wherein said base sealing edge and said lid sealing edge are molded to be correspondingly mateable to each

US 6,196,404 B1

5

other and upon mating said base sealing edge and said lid sealing edge form a middle seal and an exterior seal and said base rim and said lid rim form an interior seal and further wherein said protrusion pushes said base sealing edge against said lid sealing edge.

2. The container according to claim 1, wherein said interior seal has a surface area greater than said middle seal and said exterior seal.

3. The container according to claim 1, wherein said interior seal has a surface area two times greater than the surface area of said middle seal and three times greater than the surface area of said exterior seal.

4. The container according to claim 1, wherein at least a second base is stackable within said base.

5. The container according to claim 1, wherein at least a second lid is stackable within said lid.

6. The container according to claim 1, wherein at least a second container is stackable on said container.

7. The container according to claim 1, said base sealing edge further comprising:

an inner base edge extending generally vertically upward from said base rim;

a middle base sealing edge extending substantially horizontally outward from said inner base edge; and

an exterior base sealing edge extending substantially vertically downward from said middle base sealing edge; and

said lid sealing edge further comprising:

an inner lid edge extending generally vertically upward from said lid rim, wherein said protrusion is attached to said inner lid edge;

a middle lid sealing edge extending substantially horizontally outward from said inner lid edge; and

an exterior lid sealing edge extending substantially vertically downward from said middle lid sealing edge, said locking lip protruding from said downward exterior lid sealing edge;

wherein upon mating of said bottom and said lid, said protrusion pushes said inner base edge outwards so that said base rim and said lid rim form said interior seal and said middle base sealing edge and said middle lid sealing edge form said middle seal and said exterior base sealing edge and said exterior lip sealing edge form said exterior seal.

8. The container according to claim 7, wherein the engagement of one of said exterior seal, said middle seal or

6

said interior seal urges the engagement of the other two remaining seals.

9. The container having three seals, comprising:

a base having

a substantially planar bottom,

a base perimeter wall extending substantially vertically upward from said bottom,

a base rim extending substantially horizontally from said base perimeter wall, and

a base sealing edge having

an inner base edge extending generally vertically from said base rim,

a middle base sealing edge extending substantially horizontally from said inner base edge, and

an exterior base sealing edge extending substantially vertically from said middle base sealing edge;

a lid having

a substantially planar top,

a lid perimeter wall extending substantially vertically downward from said top,

a lid rim extending substantially horizontally from said lid perimeter wall, and

a lid sealing edge having

an inner lid edge extending generally vertically from said lid rim,

a protrusion attached to said inner lid edge,

a middle lid sealing edge extending substantially horizontally from said inner lid edge, and

an exterior lid sealing edge extending substantially vertically from said middle lid sealing edge, and

a locking lip protruding from said exterior lid sealing edge;

wherein, said base sealing edge and said lid sealing edge are molded to be correspondingly mateable to each other and upon mating of said base and said lid, said base rim and said lid rim form said interior seal, said middle base sealing edge and said middle lid sealing edge form said middle seal and said exterior base sealing edge and said exterior lip sealing edge form said exterior seal, and

wherein, the engagement of one of said exterior seal, said middle seal and said interior seal urges the engagement of the other two remaining seals, and said interior seal has a surface area greater than said middle seal and said exterior seal.

* * * * *